UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CIV - SEITZ

CASE NO. 00-6204

CLAIRE BLUMBERG, on her own behalf, as Trustee of the Claire Blumberg Trust, and on behalf of all class members similarly situated,

  Plaintiffs,

v.

FIDELITY AND GUARANTY LIFE INSURANCE COMPANY, a Maryland corporation,

  Defendant.

_____/

MAGISTRATE JUDGE
GARBER



## CLASS ACTION COMPLAINT

Plaintiff Claire Blumberg ("Blumberg"), on her own behalf, as Trustee of the Claire Blumberg Trust, and on behalf of all Class members similarly situated, sues Defendant Fidelity and Guaranty Life Insurance Company ("F&G").

### INTRODUCTION

1. This is a class action for fraudulent omission, negligent omission, breach of fiduciary duty, unjust enrichment, and money had and received. Each claim is based upon F&G's conduct in (1) failing to disclose to Plaintiff and Class members that F&G and its agents were selling Plaintiff and Class members Single Premium Deferred Annuities ("Annuities") providing for guaranteed first-year interest rates that were lower than the guaranteed first-year interest rates provided for in substantially the same Annuities they sold to others, and (2) failing to provide Plaintiff and Class

---

Hanzman Criden Chaykin & Ponce, P.A.
FIRST UNION FINANCIAL CENTER • SUITE 2100 • 200 SOUTH BISCAYNE BOULEVARD • MIAMI, FLORIDA 33131 • TELEPHONE (305) 357-9000

members with the higher guaranteed first-year interest rates Defendant provided to other purchasers of substantially the same Annuities. Plaintiff, on her own behalf and as representative of the Class defined below, seeks recovery of the difference between the interest benefits credited to her account and the accounts of all Class members and those higher interest benefits credited to others who purchased substantially the same Annuities and were credited with a higher first-year guaranteed interest rate, together with interest and punitive damages.

## PARTIES

2.  Claire Blumberg is a citizen of the State of Florida who resides within this district. She is also the Trustee of the Claire Blumberg Trust.

3.  F&G is an Maryland corporation with its principal place of business in Baltimore, Maryland.

## JURISDICTION AND VENUE

4.  Diversity jurisdiction exists in this Court under 28 U.S.C. § 1332 because the dispute is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs and inclusive of Class members' aggregated punitive damages. This Court also has jurisdiction over certain of the claims in this action pursuant to supplemental jurisdiction principles and 28 U.S.C. § 1367(a).

5.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391. Defendant conducts business in this district, and many of the acts and transactions complained of herein were committed against Plaintiff and Class members in this district.

Hanzman Criden Chaykin & Ponce, P.A.
FIRST UNION FINANCIAL CENTER • SUITE 2100 • 200 SOUTH BISCAYNE BOULEVARD • MIAMI, FLORIDA 33131 • TELEPHONE (305) 357-9000

## CLASS ALLEGATIONS

6.    Plaintiff brings this action as a class action pursuant to Rule 23(a) of the Federal Rules of Civil Procedure on behalf of a nationwide class consisting of all those who purchased annuities offered for sale by F&G with interest benefits that did not reflect the higher interest rates that F&G offered and provided to other purchasers of substantially the same Annuities (the "Class"). Excluded from the Class are the Defendant, its employees, agents, family members, legal representatives, heirs, subsidiaries, affiliates, successors or assigns.

7.    Members of the Class are so numerous and geographically dispersed throughout the United States that joinder of all Class members is impracticable. Plaintiff estimates that the Class includes thousands of clients of the Defendant. Moreover, on information and belief, Plaintiff alleges that the vast majority of people victimized by Defendant's scheme were senior citizens.

8.    Plaintiff will fairly and adequately protect the interests of all Class members and has retained competent counsel that are experienced in class action litigation.

9.    Plaintiff's claims are typical of the claims of the Class, and all Class members sustained losses arising out of Defendant's same wrongful conduct. Thus, the interests of the Plaintiff are the same as the Class members' interests and do not place the Class in jeopardy.

10.    The questions of law and fact common to the Class predominate over any question solely affecting individual Class members. Among the questions of law and fact common to all Class members are the following:

    A.    Whether Defendant made available and paid to others a higher rate of interest on substantially the same Annuities Defendant sold to Plaintiff and Class members, but failed to disclose, offer or provide that higher rate of interest to Plaintiff and Class members;

B. Whether Defendant committed fraud when it failed to disclose to Plaintiff and Class members, either in the annuity contracts they executed or otherwise, that a higher rate of interest had been offered to and received by others for the purchase of substantially the same Annuities;

C. Whether Defendant negligently omitted material information in connection with the sale of annuities to Plaintiff and Class members when it failed to disclose to Plaintiff and Class members, either in the annuity contracts they executed or otherwise, that a higher rate of interest had been offered to and received by others for the purchase of substantially the same Annuities;

D. Whether Defendant's conduct in offering higher rates of interest on substantially the same Annuities to others than to Plaintiff and Class members constitutes a breach of fiduciary duty to Plaintiff and Class members;

E. Whether, in justice and fairness, the difference between the amounts accrued at the lower interest rates credited to Plaintiff and Class members' accounts, and the amounts credited to the accounts of those who received the higher interest rates for substantially the same Annuities is money had and received by Defendant that should be refunded and paid over to Plaintiff and Class members;

F. Whether Defendant was unjustly enriched by paying Plaintiff and Class members interest rates lower than those that had been offered to and received by others for the purchase of substantially the same Annuities, and retaining income or profits earned on the funds withheld; and

G. Whether Defendant's conduct in offering higher rates of interest to others than to Plaintiff and Class members on substantially the same Annuities was arbitrary and discriminatory.

11. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Class members — who, upon information and belief, number in the thousands — is impracticable. Furthermore, the expense and burden of individual litigation makes it impossible for the Class members to individually redress the wrongs done to them.

4

Hanzman Criden Chaykin & Ponce, P.A.
FIRST UNION FINANCIAL CENTER • SUITE 2100 • 200 SOUTH BISCAYNE BOULEVARD • MIAMI, FLORIDA 33131 • TELEPHONE (305) 357-9000

## DEFENDANT'S FRAUDULENT SCHEME

12.     At all relevant times, F&G was in the business of selling life insurance and related investment vehicles, including Annuities. Customers could invest in such Annuities by making a single payment, with the Annuities being credited with a minimum first-year guaranteed interest rate.

13.     Annuities are more likely to be bought by senior citizens. Upon information and belief, Plaintiff alleges that the vast majority of Class members are sixty years old or older.

14.     On or about May 23, 1997, Blumberg, as trustee for the Claire Blumberg Trust, purchased from Defendant a "Resolute 4" single premium fixed annuity policy. On or about May 11, 1998, Blumberg also purchased a "Resolute 5" single premium fixed annuity policy. At the time Blumberg was purchasing her annuities, Defendant was selling substantially similar Annuities to other customers. While those other Annuities have different names, they are in fact substantially the same as the Annuities purchased by Blumberg. Indeed, from a financial standpoint, those Annuities offer the purchasers virtually identical benefits, except for different interest rates and interest "bonuses." Such interest rates and bonuses are directly related to the amount of commission available to the agent or broker selling the Annuities, with lower interest rates and bonuses accompanying higher commissions.

15.     Defendant gave its agents and brokers discretion to arbitrarily decide who received the higher interest rate guarantee and bonus and who did not. In an article entitled "<u>Bonus Annuities Create an Integrity Dilemma</u>," industry commentator Danny Fisher calls this practice the "Pick A Commission" ("PAC") plan. The article is attached hereto as Exhibit "A." Under such PAC plans, the agent or broker has the option of selling an annuity to a purchaser that provides, for example, either a zero, one, two or three point bonus. If the purchaser buys a zero-bonus annuity, the broker

receives the maximum commission. If the purchaser buys a one-point-bonus annuity, the broker's commission is reduced by one point. Hence, the only way for the purchaser to receive the full benefits available under the annuity is if the broker's commission is reduced by the full amount of the "bonus." Fisher notes that these PAC plans are becoming common in the industry among competitors.

16. Defendant has made PAC plans available to its independent network of brokers for sale in Florida and other states. Under Defendant's PAC plans, Defendant gave discretion to its brokers to make higher interest rates available to some purchasers but not to others. Defendant did not disclose to Plaintiff and Class members in the annuity contracts they executed or otherwise that an arbitrary and discriminatory higher interest rate was offered to and received by others for the purchase of substantially the same Annuities.

17. The sale of any annuities with discriminatory benefits payable is unlawful. The Florida anti-discrimination statute, which is substantially similar to the model statute enacted by many other states, prohibits "knowingly making or permitting any unfair discrimination between individuals of the same actuarially supportable class and equal expectation of life, in the rates charged for any life insurance or annuity contract, in the dividends or other benefits payable thereon, or in any other of the terms and conditions of such contract." Fla. Stat. § 626.9541(1)(g)(1).

18. Defendant's practice of offering and selling Annuities to Plaintiff and Class members with guaranteed interest rates that did not reflect the higher interest rates made available to others purchasing substantially the same Annuities does not meet any of the exceptions to the prohibition against unfair discrimination under the Florida statute or the model statute and is otherwise unlawful under the common law of the states where Class members reside.

6

Hanzman Criden Chaykin & Ponce, P.A.
FIRST UNION FINANCIAL CENTER • SUITE 2100 • 200 SOUTH BISCAYNE BOULEVARD • MIAMI, FLORIDA 33131 • TELEPHONE (305) 357-9000

19. Due to the extensive regulation of the insurance industry and the prohibitions against unfair sales practices and discriminatory benefits, Plaintiff and Class members had a reasonable expectation that (a) Defendant would make full and honest disclosure of the interest rates applicable to the Annuities, and (b) Defendant's sale of substantially the same Annuities to different persons would be made at the same guaranteed interest rates.

20. Because of the superior knowledge possessed by Defendant and the extensive regulation of the insurance industry to eliminate unfair sales practices, including the prohibition against unfairly discriminatory benefits, Plaintiff and Class members reasonably looked to Defendant as a fiduciary and reasonably expected that the Defendant would observe the highest standards of honesty, loyalty and fair dealing in all its interactions with Plaintiff and Class members.

21. Defendant offered and sold to others substantially the same Annuities they sold to Plaintiff and Class members, but with higher guaranteed interest rates than the rates provided to Plaintiff and Class members.

22. F&G gave its agents discretion to arbitrarily decide who received the higher interest rate guarantee and who did not.

23. Defendant made such higher interest rates available to others, but neither made available nor disclosed to Plaintiff and Class members in the annuity contracts they executed or otherwise, that an arbitrary and discriminatory higher interest rate was offered to and received by others for the purchase of substantially the same Annuities.

24. Plaintiff and Class members, by virtue of the circumstances of this case, including the prohibition against arbitrary, unfairly discriminatory benefits, Defendant's superior knowledge and the fiduciary relationship between Plaintiff and Class members and Defendant, were entitled to

Hanzman Criden Chaykin & Ponce, P.A.
FIRST UNION FINANCIAL CENTER • SUITE 2100 • 200 SOUTH BISCAYNE BOULEVARD • MIAMI, FLORIDA 33131 • TELEPHONE (305) 357-9000

disclosure of the fact that a higher guaranteed rate of interest had been offered to and received by others for the purchase of substantially the same Annuities.

25. Defendant continued to fail to disclose in the account statements it sent to Plaintiff and Class members that Plaintiff and Class members were credited with a lower interest rate for substantially the same Annuities that others had purchased at the same rates and premiums as the rates and premiums paid by Plaintiff and Class members.

26. Upon information and belief, Defendant has not made any effort to contact Plaintiff or any Class members to advise them that they purchased Annuities with arbitrary, unfairly discriminatory benefits and that others were offered substantially the same Annuities with higher guaranteed interest rates than those offered to Plaintiff and Class members.

27. Plaintiff and the Class members did not discover and, in the exercise of due diligence, could not have discovered the fact that Defendant credited Plaintiff and Class members with lower interest rates than the rates credited to others who bought substantially the same Annuities.

28. In light of Defendant's continuing misrepresentation on each account statement and its failure to disclose to Plaintiff and Class members that others had received higher interest rates on the same Annuities, discovery of this underpayment of interest was not reasonably possible and/or any applicable statute of limitations is equitably tolled, allowing Plaintiff and Class members to pursue their claims from the time Defendant began the practice of offering different customers different interest rates on substantially the same Annuities through the date judgment is entered in this case.

29. Defendant's conduct was gross, malicious and oppressive, involving a uniform fraudulent course of conduct and omissions and misrepresentations that were made with knowledge

8

of falsity or were so recklessly made as to amount to the same thing. Defendant's willful and contumacious conduct justifies awarding punitive damages to Plaintiff and the Class.

## COUNT I
### Fraudulent Omission

30. Plaintiff readopts and realleges each and every allegation contained in paragraphs 1 through 29 as if fully set forth herein.

31. Defendant and its agents stood in a fiduciary and/or confidential relationship to Plaintiff and the Class and owed to Plaintiff and the Class the duties of utmost loyalty and honesty, including the duty not to make material omissions and misrepresentations or suppress material facts.

32. Defendant and its agents also owed Plaintiff and the Class the duty not to make material omissions or suppress material facts because of the circumstances of this case, including, among other things, Defendant's superior knowledge, the importance of the omissions and the fact that the parties were not dealing at arm's-length.

33. Defendant failed to disclose to Plaintiff and Class members, either in the annuity contracts they executed or otherwise, that an arbitrary and unfairly discriminatory higher interest rate had been offered to and received by others for the purchase of substantially identical Annuities.

34. Defendant knew or was reckless in not knowing that this failure to disclose that others had received a higher interest rate guarantee for substantially the same Annuities was a material omission of fact, and Defendant intended this omission to induce the reliance of Plaintiff and the other Class members.

35. Plaintiff and Class members reasonably relied on Defendant's material omissions of fact to their detriment in purchasing the Annuities providing for guaranteed interest that did not

9

reflect the higher guaranteed interest rates offered to and received by others for the purchase of substantially the same Annuities.

36. Plaintiff and the other Class members relied upon the correctness of the account statements by Defendant and paid the demanded premiums for the Annuities without the knowledge that they were being underpaid interest by Defendant.

37. As a proximate result of Defendant's fraud, Plaintiff and the other Class members have suffered damages and are entitled to recover their damages, including punitive damages.

## COUNT II
### Negligent Omission

38. Plaintiff readopts and realleges each and every allegation contained in paragraphs 1 through 29 as if fully set forth herein.

39. Defendant and its agents stood in a fiduciary and/or confidential relationship to Plaintiff and the Class and owed to Plaintiff and the Class the duties of utmost loyalty and honesty, including the duty to not make material omissions or misrepresentations or suppress material facts.

40. Defendant and its agents also owed Plaintiff and the Class the duty to not make material omissions or suppress material facts because of the circumstances of this case, including, among other things, Defendant's superior knowledge, the importance of the omissions and the fact that the parties were not dealing at arm's-length.

41. Defendant negligently failed to disclose to Plaintiff and Class members, either in the annuity contracts they executed or otherwise, that an arbitrary and unfairly discriminatory higher guaranteed interest rate had been offered to and received by others for the purchase of substantially the same Annuities.

HANZMAN CRIDEN CHAYKIN & PONCE, P.A.
FIRST UNION FINANCIAL CENTER • SUITE 2100 • 200 SOUTH BISCAYNE BOULEVARD • MIAMI, FLORIDA 33131 • TELEPHONE (305) 357-9000

42. Defendant made these material omissions and misrepresentations of fact with careless indifference as to their truth or falsity and with the intent to induce the reliance of Plaintiff and the other Class members.

43. Plaintiff and Class members reasonably relied on Defendant's material omissions and misrepresentations of fact to their detriment in purchasing Annuities with interest rates that did not reflect the higher interest rates provided to others for the purchase of substantially the same Annuities.

44. Plaintiff and the Class members relied upon the correctness of the account statements by Defendant and paid the demanded premiums for the Annuities without the knowledge that they were being credited with lower interest rates than the interest rates credited to others who purchased substantially the same Annuities.

45. As a proximate result of Defendant's negligent omissions and misrepresentations, Plaintiff and the other Class members have suffered damages and are entitled to recover their damages, including punitive damages.

## COUNT III
### Breach of Fiduciary Duty

46. Plaintiff readopts and realleges each and every allegation contained in paragraphs 1 through 29 as if fully set forth herein.

47. Defendant and its agents stood in a fiduciary and/or confidential relationship to Plaintiff and the Class and owed to Plaintiff and the Class the duties of utmost loyalty and honesty, including the duty to not make material omissions or misrepresentations or suppress material facts,

11

and the duty to not unfairly discriminate among its clients as to the interest benefits of substantially identical Annuities.

48. Defendant's practice of providing higher guaranteed interest rates to other purchasers of substantially the same Annuities than the rates provided to Plaintiff and Class members was a breach of its fiduciary duties to Plaintiff and Class members.

49. Defendant's initial and continuing failure to disclose to Plaintiff and Class members the fact that a higher interest rate was available and was provided to other purchasers of the same Annuities was a breach of Defendant's fiduciary duties to Plaintiff and Class members.

50. Defendant committed these breaches intentionally or with reckless disregard of Plaintiff's and Class members' rights.

51. As a proximate result of Defendant's breaches of fiduciary duty, Plaintiff and the other Class members have suffered damages and are entitled to recover their damages, including punitive damages.

## COUNT IV
### Unjust Enrichment

52. Plaintiff readopts and realleges each and every allegation contained in paragraphs 1 through 29 as if fully set forth herein.

53. Plaintiff and Class members conferred a benefit upon Defendant by purchasing the Annuities at prices that exceeded what the Annuities were actually worth. Defendant had knowledge of this benefit being conferred upon it by the Plaintiff and Class members.

12

54. Defendant voluntarily accepted and retained the benefit conferred upon it by Plaintiff and the Class, with full knowledge that Plaintiff were not being paid sufficient interest for the Annuities they purchased.

55. Notwithstanding the duties owed by Defendant to Plaintiff and the Class members, Defendant never made Plaintiff and the Class members aware that Defendant sold Annuities to others that were identical to those purchased by Plaintiff and Class members but offered a higher first-year interest rate. It would therefore be inequitable for Defendant to retain the benefit conferred upon it by Plaintiff and the Class without paying the value thereof to Plaintiff and the Class members.

56. Plaintiff and the Class were without knowledge of the fact that they were receiving a lower interest rate than that received by other of Defendant's customers, and therefore did not make the overpayment voluntarily.

57. Moreover, by taking advantage of its position of trust and confidence as to Plaintiff and the Class members — its clients — Defendant withheld the additional amounts of interest that should have accompanied the Annuities for which it charged the same prices as higher-yielding Annuities. Defendant therefore imposed the unjustly low interest rate upon Plaintiff and the Class members.

58. By reason of the foregoing, Plaintiff and the Class members are entitled to recover the interest that they should have received from Defendant but for Defendant's unjust actions, together with all income or other profits earned by Defendant on the monies unjustly withheld from Plaintiff and Class members, plus punitive damages.

HANZMAN CRIDEN CHAYKIN & PONCE, P.A.
FIRST UNION FINANCIAL CENTER • SUITE 2100 • 200 SOUTH BISCAYNE BOULEVARD • MIAMI, FLORIDA 33131 • TELEPHONE (305) 357-9000

## COUNT V
### Money Had and Received

59. Plaintiff readopts and realleges each and every allegation contained in paragraphs 1 through 29 and 53 through 57 as if fully set forth herein.

60. As described above, Defendant has had and received money which, in justice and fairness, should be refunded and paid over to Plaintiff and Class members.

61. As a result of Defendant having wrongfully withheld money from Plaintiff and Class members, based upon providing less interest to Plaintiff and Class members than Defendant provided to other customers who paid the same for their Annuities than did the Plaintiff and Class members, Plaintiff and Class members are entitled to recover the amounts that Defendant wrongly withheld through the date judgment is entered, together with pre-judgment interest.

### PRAYER FOR RELIEF

Wherefore, Plaintiff, on her own behalf, as Trustee of the Claire Blumberg Trust, and on behalf of all Class members similarly situated, respectfully requests that this Court:

1. Certify this action as a class action under Federal Rule of Civil Procedure 23;

2. Award Plaintiff and the other Class members damages, including punitive damages, suffered as a result of the wrongs complained of herein, together with appropriate income or profits earned by Defendant as a result of Defendant's conduct;

3. Award pre-judgment interest; and

4. Award such further relief as is appropriate in the interest of justice.

Hanzman Criden Chaykin & Ponce, P.A.
FIRST UNION FINANCIAL CENTER • SUITE 2100 • 200 SOUTH BISCAYNE BOULEVARD • MIAMI, FLORIDA 33131 • TELEPHONE (305) 357-9000

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all issues so triable.

Dated: February 8th, 2000.

                                       Respectfully submitted,

                                       Hanzman Criden Chaykin & Ponce, P.A.
                                       Attorneys for Plaintiff
                                       2100 First Union Financial Center
                                       200 South Biscayne Boulevard
                                       Miami, Florida 33131
                                       Telephone: (305) 357-9000
                                       Facsimile: (305) 357-9050

                                       _____
                                       Michael A. Hanzman
                                          Florida Bar No. 510637
                                       Michael E. Criden
                                          Florida Bar No. 714356
                                       Alan Rolnick
                                          Florida Bar No. 715085
                                       Kevin B. Love
                                          Florida Bar No. 993948

L:\LIBRARY\1993\Pleading\F&G.Complaint.wpd

# Bonus Annuities Create An Integrity Dilemma

BY DANNY FISHER

"We have a great new annuity designed for agents. You will have the option of giving your clients a first-year interest rate bonus of 1 percent, 2 percent, or 3 percent. Or, you can simply sell the annuity without a bonus," an excited insurance company executive told me.

"Oh, you're talking about a Pick-A-Commission annuity," I said.

"What's a Pick-A-Commission annuity?"

**OPINION**

"Well, the only way to give the client the interest bonus is for the agent to give up commission. So, the agent gets to pick what commission he wants to earn and then give what's left to the client. Hence, the name, Pick-A-Commission (PAC)."

He agreed, and then explained that for each 1 percent of bonus interest paid, the commission is reduced by 1 percent.

I told him to send me information relating to the maximum bonus of 3 percent, because that was the only option we would sell.

(continued on page 12)

**SALES NEWS & TRENDS**

## Bonus Annuities

(continued from page 7)

He seemed perplexed and asked why I wouldn't be interested in selling the zero bonus deal.

I asked him, "If you were to sell this annuity to your mother, which bonus would you give her?" He quickly said, "Of course, the 3 percent."

"Well, how would you feel if I sold her the zero bonus annuity, and then you both found out that she could have received a 3 percent bonus? What kind of opinion would you have of me? Do you think either of you would ever do business with me again?" He meekly said, "I see your point."

Here are some other points we discussed.

The reason why his company developed the PAC was because other companies have introduced a PAC and his

EXHIBIT "A"

company was simply trying to meet the competition.

I mused that just because someone commits suicide doesn't mean I want to join the group.

If I sold a zero bonus PAC to my clients and they later learned how I had chiseled them, it would be tantamount to committing business suicide. Therefore, if I wanted to stay in business, the only option I could sell would be the 3 percent bonus.

The company executive wondered why so many of their agents were asking for PACs. My observation was that agents with integrity weren't doing the asking.



**Danny Fisher**

Professional agents with letters after their name, such as CLU, ChFC, CFP, or agents who belong to organizations, such as MDRT or an association of life underwriters, are supposed to adhere to a Code of Ethics. Basically stated, they promise to do the best job possible for their clients— without regard to which policy pays the most commission.

PACs do just the opposite, and they impose a needless integrity dilemma on the agent. A person with integrity will only sell a PAC with the highest bonus available.

The executive also said that most of his company's agents would only sell the annuity without a bonus and earn the maximum commission. Then I told him he has a company full of agents with no integrity. He offered no comment.

This particular company has certification from the Insurance Marketplace Standards Association, essentially meaning the company has committed to truth in advertising and requires its agents to be honest. But if the company's approaches are typical of its peers, I think this raises some questions about the value of IMSA certification for the policyholder.

This company, as well as many others, also requires a Disclosure Statement to be submitted with each application. On the form, clients sign a statement indicating they understand what they are buying.

Some applications and disclosure statements also include "suitability" questions, whereby agents "sign off" that the policy meets the financial objectives of the policyowner.

I wonder how many zero bonus PAC annuities would be sold if the disclosure statements included a line like this, "The agent has

## Bonus Annuities Create A Dilemma

(continued from page 12)

bonus not paid to the policyowner is retained by the agent."

In today's world, where many states require agents to take courses in ethics, professional organizations busily touting their Code of Ethics, and insurance companies requiring agents to sign IMSA compliance forms, it seems insane that Pick-A-Commission annuities are becoming so prevalent.

The old three-legged stool that the insurance business was founded on—the company, the agent, and the client—appears to be getting wobbly in some sectors, as some insurers cloak themselves in market conduct and compliance handbooks but then roll out products that entice agents to do what they shouldn't.

While some companies and agents continue seeking new gimmicks to sell annuities, the bold truth is as evident as the sun rising every morning. The formula for selling huge amounts of annuities is simple: Pay the highest interest rate possible to policyowners, a fair commission to the agent, and let the insurance company earn a fair spread. It works every time.

There are hundreds of ethical companies and thousands, upon thousands of agents with integrity in the insurance business. It's a shame that bad marketing decisions by some can make it so tough for others to sell high quality, consumer-oriented annuities. NU

DANNY FISHER, CLU, CHFC, IS PUBLISHER OF THE FISHER ANNUITY INDEX, DALLAS, TEXAS. HE MAY BE E-MAILED AT FISHERDH@IX.NETCOM.COM.

◁ Circle 131 on RSVP Card

00-6204 CIV-SEITZ

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS
Claire Blumberg, on her own behalf, as Trustee of the Claire Blumberg Trust, and on behalf of all class similarly situated

## DEFENDANTS
Fidelity and Guaranty Life Insurance Company, a Maryland corporation

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF **BROWARD**
(EXCEPT IN U.S. PLAINTIFF CASES)

A-NORTH-6204 SEITZ/GARBER

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Michael A. Hanzman, Esq.
Hanzman Criden Chaykin & Rolnick
200 S. Bisc. Blvd., Ste 2100, Miami

ATTORNEYS (IF KNOWN)
**MAGISTRATE JUDGE GARBER**

(d) CIRCLE COUNTY WHERE ACTION AROSE:
DADE, MONROE, (BROWARD), PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN X IN ONE BOX ONLY)
- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Cases Only)
(PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

|   | PTF | DEF |   | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.

IVa. **10** days estimated (for both sides) to try entire case.

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| A CONTRACT | A TORTS PERSONAL INJURY | TORTS PERSONAL INJURY | B FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | ☐ 310 Airplane | ☐ 362 Personal Injury—Med Malpractice | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury—Product Liability | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 330 Federal Employers Liability | | ☐ 630 Liquor Laws | A PROPERTY RIGHTS | B ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☒ 370 Other Fraud | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 350 Motor Vehicle | B ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 690 Other | A LABOR | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | | ☐ 710 Fair Labor Standards Act | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | | | A | B ☐ 720 Labor/Mgmt Relations | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 892 Economic Stabilization Act |
| A REAL PROPERTY | A CIVIL RIGHTS | B PRISONER PETITIONS | | ☐ 740 Railway Labor Act | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | ☐ 790 Other Labor Litigation | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | | B ☐ 791 Empl. Ret. Inc Security Act | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | A FEDERAL TAX SUITS | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 871 IRS—Third Party 26 USC 7609 | | ☐ 890 Other Statutory Actions *A or B |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights *A or B | | | |

## VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Refiled
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

Check YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE _____ DOCKET NUMBER _____

DATE: 2/9/00
SIGNATURE OF ATTORNEY OF RECORD
Michael A. Hanzman

UNITED STATES DISTRICT COURT
FOR OFFICE USE ONLY: Receipt No. 518544   Amount: 150.00